6 0 6 8 8 and we'll hear from Mr Butler first. Morning, Your Honor. Smith is court. Like this one have many different moving parts. There are issues of municipal liability of individual liability. There's a doctrine of qualified immunity. This court and lower courts within the circuit have this appeal presents an excellent opportunity for this court to consider how all the pieces of the puzzle work together. The starting point is the plaintiff's theory of liability. They allege that Mayor Rogers and Director Myers to non final decision makers that their actions led to their terminations. Under this theory, they seek to impose both personal liability on the mayor and the director, as well as municipal liability on the city of theory. It's important to break down exactly what the cat's paw doctrine is, because often it gets confused in the case law with ratification. Under the cat's paw scenario, you have a recommender who makes a pretextual recommendation to a final decision maker under ratification scenario. By contrast, the final decision maker has the same unlawful animus as the recommender. So in the cat's paw scenario, the ultimate final decision maker has been duped or hoodwinked by the recommender. But in the ratification scenario, you have two bad actors, both with a joint unlawful animus. The joint question in this case is whether a cat's paw theory of liability is ever a viable liability theory in the context of 1983. The Seventh Circuit, for example, has suggested that it's not saying that there's no reason to try to awkwardly fit the cat's paw doctrine to this area of civil rights law when you already have concepts like ratification that better comport with 1983 principles. That's the 2009 decision in Water v. City of Chicago. We asked this court to hold the same thing today. There's no dispute that the Board of Aldermen were the final decision makers. That comes from page six of the plaintiff's brief. There's also no dispute that the Board of Aldermen had no unlawful animus. That comes from page eight of the plaintiff's brief. So the only question is whether under an alleged cat's paw theory, you can have any 1983 liability. This court's cases in the individual liability context make clear that only final decision makers may be held liable under 1983. We see that from Johnson v. Louisiana, as well as the Whitting v. Southern Miss decision. Let me ask you a question, sir, because the court is arguing it at two levels. One level is whether the aldermen, the decision makers were acting as a, quote, cat's paw for the mayor. And the other one is whether the mayor and Mr. Myers can be held individually liable even though they were not decision makers, right? That's correct. How do we have appellate jurisdiction over that first question about the city of Pearl? Because normally we do not have, did Judge Wingate give a 54B interlocutory ruling? He did not, right? So how do we have appellate jurisdiction over that question? Your Honor, under Pearson v. Callahan, of course, in the interlocutory, I mean, in the interlocutory appeal context, this court can either skip straight to the issue of qualified immunity and determine whether it's clearly established, or they can decide that underlying constitutional question. Yeah, but a city can't have immunity. Right. I understand. But if you decide, our principal argument that we advance on the issue, on the underlying constitutional question for the individual liability is that cat's paw liability simply has no place in 1983. And at this court decides that in our favor, that 1983 just does not allow for cat's paw liability theory, then it would decide it with respect to the individual liability claim, as well as with respect to the municipal liability claim. What case do you have, any circuit authority that would find pendant appellate jurisdiction over the city's appeal? Your Honor, the circuit courts are unanimous that if the court resolves one issue that will dispose of both claims, then there's pendant. I'm strictly entwined. But do you have any case where the doctrine of pendant jurisdiction has been applied to a different party, the city? I do, Your Honor. In fact, we cite the Sixth Circuit in our brief, as well as the Seventh Circuit. There's a Sixth Circuit case that we cite in our brief. Which is? It's in the reply brief, I think. And then there's a Seventh Circuit brief, as well. But these cases are unanimous, and I'll give you the answer. Because you were deciding the qualified immunity question against the individual defendants? Right. For example ---- That's what those cases say. Yes, sir. For example, if you decided the case on the alternative basis of Garcetti and said that the plaintiffs didn't ---- Well, that's a separate question. Let me hear his answer on that, please. Yes. Yes. If you decided it under Garcetti and said these plaintiffs didn't engage in protected speech, then that would be dispositive of the individual liability claim, as well as the municipal liability claim. But we wouldn't ---- but the point is, I don't think we'd be able to ---- the fact that City of Pearl filed ---- was involved in the notice of appeal and that you represent them on appeal does not mean that we necessarily have jurisdiction, but our ruling will inevitably affect the district court below. So it really doesn't matter. If you win for the individuals, you will ---- the district court will have to rule accordingly in the matters on remand, and if you lose, you lose. That's certainly correct, depending on the grounds which this court were to decide the case. Right. Right. But I think that the same thing that applies with the mandatory element of the cause of action applies with the plaintiff's theory of the case. If catchpaw is just not a viable theory in 1983 law, and that's the only theory of the individual liability context would give the court ---- You said two different ifs. If catchpaw theory is their only theory, and if it's not viable, the if it's not viable would be a legal question which you describe as unsettled and invite us to settle it. Right. Which, therefore, under Culbertson may be conclusive for the individual defense. Right. But it wouldn't necessarily be for the city. If the court decided that catchpaw ---- Then it's unsettled. If it's unsettled. That is correct, Your Honor. If this court were to simply skip to the issue of qualified immunity under its Pearson authority and say that the law is unsettled, qualified immunity, we're not going to reach the underlying constitutional question, then I agree it's a much tougher hill for me to climb to say that this court would have penitentiary penalties. But for us to do more than that does get us into the Dupree decision that you critique. Exactly. Yeah. But here's a point that I'm looking forward to hearing them state, because the briefing has been minimal, more from, in my view, their side. But also the district court's opinion doesn't give us much in terms of theory. So when you reduce the case to their only theory is the catchpaw, I didn't see that in the complaint. When I read the complaint, the theory is that the mayor was the final decision-maker and his final decision was the September 13th letter. I didn't see any suggestion in the complaint that the theory was leverage catchpaw. Your Honor, I think the plaintiff's theory- They may say that you're 100 percent right. It's always been catchpaw. Well, I think it has been. I mean, if you go to their, everybody concedes that under state law, under Mississippi state law, only the Board of Aldermen has the final- Well, you say that, but I have difficulty with that, because when I read the deposition, it didn't seem like Pennypacker, these individuals, were clear. They jump back and forth. The mayor makes the final decision. He's the final- Well, but the law is the law. Well, but then I was going to get to the law. The law that you've given us was in your 28-J letter, citing advanced technology, which is a decision that came down well before briefing. So we've got only 28-J suggestion of that as the law, but if I remember that case, that was after a full trial, and we took pages and pages of analysis to say that the city council was the final decision maker, not the mayor, as to a person. It's closer, but we don't have much discussion of it. So then I backed up your briefs, and if I'm not mistaken, you never say anything as a matter of law in your argument section. The only cite you give for the fact that the city council, the board, is the final, is in your fact section, and you cite the 30-plus-year-old attorney general opinion. But here's my question. In the 28-J letter decision you gave us, didn't that decision say that the attorney general opinion is not binding law for Mississippi? Well, Your Honor, the reason that it's not discussed in my brief is because it's always been, it's never been disputed, that the board is the final decision maker. I would point this court to the mayor's depositions also in the record. If you go to page 786 of the record, and then 814 through 817, during the plaintiff's council discussion with the mayor, the mayor explains how this process works as far as the recommendation of termination. The plaintiff's council actually agrees with him at his deposition that that's Mississippi state law, that only the board has the vote, the final vote. And we see that in... The final vote to overturn his decision to terminate, I thought... No, Your Honor. What it is, is a recommendation. Somebody in the city has to instigate the termination. Okay, so the vote, you may be right, but the vote is not to overturn his decision. His decision is purely a recommendation, and then they terminate. That's right. And if you look at page 786 through 814, 814 through 817, that explains what happens. Even if there was no appeal ever, the mayor has to take this recommendation to the board, and they have to vote on it regardless. Your Honor, taking your time, a last question then. What about if his recommendation is given, as he did here, and according to the disputed facts, at least according to the district judge, the board not only accepted the recommendation, but embraced the basis for it, i.e., his alleged lie that Pennypacker had said, I should be fired. Why wouldn't that meet any ratification theory, especially as we described it in Howell? Well, there's no evidence in this record that the final decision makers had any unlawful animus, and in fact, it's conceded on page 8 of the brief. The board of aldermen were not even deposed. But in Howell, we said even a reflexive approval could be a fact dispute as to whether they embraced the animus. I don't dispute that in some instances that a mayor's recommendation of what happened might be some evidence of ratification. But in this case, it is undisputed that the board had no unlawful animus. That was conceded in the briefing. That was conceded by both of the plaintiffs at the deposition. That gets you to where you began, which is the only possible theory is cat's ball. All you have to do is say Culbertson says it's unsettled. The individual events get qualified immunity. And then the city? And if you only resolve the case on qualified immunity, then I agree. The appended appellate jurisdiction is a much tougher standard for me. This court has said that closely related questions may be decided, and I think that there's some argument that deciding whether cat's ball is clearly established or not is closely related to the liability to the city. But it's much tougher, of course, than if the court were to wrestle with the underlying constitutional question. May I ask a question? Yes. Yes. Yes. Yes. What causes of action remain pending in the district court? Your Honor, there's several, and we actually footnote them in the background section in our brief. They seem like four or five. There are. The court didn't address any of those as well. Was your summary judgment briefing addressed to all of them, or did you? It was. It was, Your Honor. Unfortunately, the district court conducted no analysis with any claims that were not either conceded or abandoned. Right. And many of these are clearly forbidden by the Mississippi Tort Claims Act. Okay. Okay. Go ahead. I have a procedural question. Judge Wendgate denied the summary judgment motion, saying there were contested issues of fact, but he didn't state or identify what the facts were. So why do we even have jurisdiction for denial of a summary judgment on a factual dispute as opposed to a legal issue? Your Honor, I think that the issues that we – well, there's some question of whether – first of all, you can't do that in a qualified immunity context. If you take White v. Paul in the newest Supreme Court case, it says that the court has to identify the case that makes the law clearly established. Judge Wendgate didn't do that with respect to qualified immunity or any other claim. But – Should it be remanded? It shouldn't, Your Honor. If this court – this case has been pending since March 2014. There are good judicial economy reasons, legal reasons for future litigants if this court were to resolve the case, and to these particular parties, where – especially in an employment case like this one, where it's – you have back pay potentially accruing. And if this court were remanded to this court, there's no confidence that there would be a timely ruling. Well, let me ask you a question. Why didn't you – I mean, the judge didn't rule on those other summary judgment claims. I suppose you could have briefed them on appeal to us. Well, Your Honor, I didn't feel that this court – that those were closely related enough. In the interlocutory context, I thought that the 1983 claim that applies to both claims, same facts, same elements, those were closely related. Let me ask you one further thing. Have you – have the parties conducted all their discovery? They have, Your Honor. So the case is basically teed up? It is, Your Honor. It's teed up. Okay. We can do something about that. Thank you, Your Honor. Mr. Norris? Yes, ma'am. Good morning. I guess I'd like to first address an issue with regard to who the final decision maker was. We are agreeing that the board's the final decision maker. I wanted to make – there was some – it seemed like a little confusion. I created that confusion. Your briefs weren't very substantial. It's very minimal on a multitude of issues. And – but that's a good concession. I apologize, and we should have made that clear at the beginning in our brief on there. But it is a cat's paw argument that we're making. It's solely a cat's paw argument. Yes, sir. It's solely a cat's paw. Not a ratification argument. Well, it's a little of both, frankly. No, no, no. That's where you go again. Why are you saying solely cat's paw if you're saying it's both? Well, normally cat's paw deals with an issue of a non-decision maker influencing the decision maker, and the decision maker isn't aware of the protected activity, isn't aware that the non-decision maker has any particular animus. In this situation, the decision makers were fully aware. They knew of the protected activity. How do you – where do you have any evidence of that since you didn't bother to depose any of them? It's undisputed. It's in the briefs. It's in both briefs. And we did depose the mayor. Well, now, wait. I mean, all of this turns on whether they believed the mayor and Mr. Myers or whether they believed the plaintiffs as to why this $16 worth of stuff was purchased at Home Depot and whether unauthorized work was done on Myers' house, right? Correct. And if they believed – if the aldermen believed the mayor and Myers, why does that show retaliation? How can that create even a fact issue just in and of itself on retaliation? Well, we think because of Catspaw, but as well with ratification where they are aware of the protected activity. And while they – what we're asserting is that the board essentially decided to go with the mayor whether he had a retaliatory motive or not. But it seems to me you'd have to – so – but all you have – you don't really have anything to support that. You have a claim against the mayor and Myers. Correct. Who were directly involved. Correct. And then you have no evidence about the aldermen as such. Well, there's not evidence with regard to what the aldermens that voted to terminate. No, there's not evidence as regard to specifically why. We do have specifically what was presented to the aldermen and what they based their decision off of on there. And we have the audio of the hearing before the aldermen that we presented. It's in the record as well for the court. I don't know if it was sent up to the 5th Circuit, but I know it was sent to Judge Woodgate. Well, we can get that. On there. So – and it's – the plaintiff also testified by affidavit exactly what he told the members during the board. So it's undisputed. And I think even the mayor admits that. What case – you're saying that's sufficient under a ratification theory and would you point to Howell as the one that at least there are disputed issues of fact as to whether the board reflexively adopted his animus? Or what's your best authority that there is? My – I apologize. I should have had that case off the top of my head. It is – I think it's Howell v. Town of Bow. Yeah. That is your best – okay. Yes, sir. But how are we reaching – you're not contesting pendent or jurisdiction as to the city in the first place? We did not contest it in our brief on there. We looked at it as an issue. Frankly, we were going to have to get to it one way or the other before this court. And if the court wants to take it up, that's fine. If the court does not, it's up to its own jurisdictions. The way we looked at it is eventually this court will get it one way or the other. Right. So – Well, but the point is – That's why we didn't oppose it, frankly. Well, I mean, jurisdiction we have to decide to esponte, so. Yes. And that – well, that's what I figured it was kind of if you wanted it or not on there. And I certainly appreciate the argument that it is a different party that pendent jurisdiction may not apply in that situation. But I think that's just something up to the court. Do you know of any case where it has applied at the circuit level? I'm not aware of a case particularly. And we're not – I'm not arguing saying, yes, I hope you all do do this. It's more of a situation of we don't care whether you do or not. On the individual defendants, the Culbertson decision, it's a very substantial impediment. Well, I think in Dupree, the court, this court, found that where there is a cat's paw argument, that the individuals that cause the cat's paw can have individual life. We acknowledge that. But then subsequently we said in published decisions that that's unsettled law. Well – How could we possibly say now it's clearly established? Well, the court – that is one case where it said it was, and another case where it says it's unsettled law. I think the beginning case sets the precedent, and the Fifth Circuit's rule of orderliness requires the court to follow that precedent on there. It's very clear. Now, the defendant or the appellant says, well, the plaintiffs in that case didn't particularly win, but the side in that case is very specific. It specifically says that cat's paw does – that individual liability does apply. There's no mistaking it. There's no confusion. There's – I don't see how the court, frankly, could say there's confusion on the issue when the Dupree case says it very distinctly. I don't know how clear it could say it. It's very clear that Dupree holds that. Or acknowledges the law. It doesn't actually rule in its – it doesn't apply that theory in Dupree itself. Well, it – But anyway. It acknowledged that cat's paw could do it in that fashion. It did not hold that it applied in that particular – based on the facts of the case. Not that there was an issue of whether it was questionable. It was – it does apply. But the facts just don't match up on this one. I mean, this is retaliation for the exercise of First Amendment rights. That's your claim, right? Correct. And your – the whole cat's paw theory is that they got fired because they exercised their First Amendment rights. Correct. But this is in the context of did they or did they not violate city policy or arguably state law, right? Correct. There is – there's no – So you're – so the best you can say is that there were mixed – I mean, since you have no direct evidence about the aldermen, the best you can say is that the mayor and Myers were activated only by retaliation and that the aldermen made a decision. But if that's so, you can't even cat's paw that to the aldermen without saying, it seems to me, a serious fact issue about the aldermen acting not on the basis – on the basis of only retaliation versus some other – the idea that they were the ones who violated the policy. Well, Your Honor, and I think I should have addressed this earlier when you brought up the issue of, well, you did not depose the Board of Supervisors. And let's say we did depose the Board of Supervisors and they all said, well, no, we did it because you violated the state law, not because of First Amendment retaliation. Well, that doesn't end the case. They are parties – they're, I guess, people that have an interest in not being truthful on the issue. And that's a jury question. So whether we depose them and whatever they said, it's still a jury question as to what they really did. So even if they come in and say, no, that's not what happened. But you don't dispute that discovery is concluded, the case is ready for trial? I do not dispute that. It has – So you're willing to go in blind and try to show the jury that the aldermen either ratified an illegal motive or were – or, well, you know, I don't know what you do with cat's paw. But anyway. Yes, yes, we were ready to go to trial, frankly. And with – I want to address the other state law issues that they brought up. Those – they make an argument saying that a district judge has to give a detailed analysis. There's no requirement for that. I mean, certainly if it was a qualified immunity issue, there is a requirement that a judge have to give a detailed analysis. There's a clear case law. So you want to go to trial or not go to trial? I want to go to trial. Well, the case has been hanging around for quite a while. Yes, sir. It has been hanging around for a while. We got a ruling on summary judgment. And we would be at trial if this was not appealed. There's also a waiver argument we brought with regard to the qualified immunity that the defendant did not argue qualified immunity until their motion for summary judgment. We provided case law to show that there's waiver. They've not replied. There's nothing in their reply brief about waiver. From my – read it again this morning, I don't think there is. Plus the appeal was focused on the retaliation, right? Their initial brief is based on that. We countered in our briefing reply saying you waived. We also did that at the district court as well on there. It's something that we brought up at the district court. Waived what? Waived qualified immunity by not raising it timely. There's case law from this court, the First Circuit, and I think another – I can't remember – that says you have to bring that early on in the case. You can't just fully litigate your case, get to trial, and then say, oh, qualified immunity. Well, actually, you can sometimes in this court. Maybe. But I think we provide a case law that says you can waive it by failing to raise it in a timely fashion. I think in this case that qualifies. So suppose the cat's paw theory is indeed unsettled. Yes. So that means that there would be qualified immunity for Myers and the mayor, right? Well, you're assuming if the court were to say cat's paw cannot apply? Well, even if it's unsettled. They have to violate clearly established law. And there's even – I could get into more detail about what clearly established law is, but let's assume for present purposes that it has to be at least based on what the Fifth Circuit says. I understand what you're saying. So if it is not clearly established that you, albeit in the chain of command, are not the decision maker who can retaliate, if it's not clearly established that you can be liable under 1983 under those circumstances, then they didn't be entitled to qualified immunity. Not on everything. This also deals with an arrest after the termination. But you're not suing the mayor for arrest. Yes. We're suing him for – Where was that in your brief? I apologize. I can pull that up. We're – It was touched on very briefly. We put on a – Wasn't there a judicial warrant for the arrest issue? There was a warrant for the arrest, but it was based off the mayor's false accusations and his pushing the police office to do this. And there's testimony to confirm that from Mr. Pennypacker. But – So it's not just a termination. We're also dealing with a false arrest, and those also have some claims, some state law claims as well on there. So it's not just a termination. State law claims are pending below. Correct. Was the false arrest a malicious prosecution? Yes. It was a – I'm sorry. It was a malicious prosecution. But those are state law claims. Those are not – It's also encompassing in our First Amendment claim because it's part of the way the mayor retaliates. The mayor is not – Retaliation is not limited to just terminations on there. And as well, this mayor – There's questions, as Judge Higginson brought up, there's questions in the fact as to what happened in this case because under law, he didn't have authority to terminate him. But that's exactly what he did. He sent him home and said, You're terminated. You can seek a hearing on this on there. They were not allowed to continue working. So it's not – They might have one week of back pay against the mayor. Right. That's a real big reason to bring a lawsuit. I know you had other reasons. Right. Well, if that was the only thing, it certainly would still be a claim. And someone would say, Well, maybe I don't want to pursue that. But that's up to the plaintiff. Here's what – Well, let me – Let me ask you. I mean, to be honest with you, I think as best I can see, I didn't see anything in your brief that had to do with retaliation beyond the First Amendment. The last sentence of your paragraph on page 10 that concludes your retaliation discussion, so it is clear appellees were intending to make public complaints about the criminal activity and not intending to complain of the chain of command, nor was there any statutory duty for appellees to make such complaints, blah, blah, blah. I mean, the whole thing is about – I don't see anything about retaliation consisting of arrest – false arrest or anything. You said they conspired to have him falsely arrested. It's on page 8. It says, Even if this were true, Appellee's First Amendment claim also deals with Mayor Roger and Mr. Myers working together to have appellees falsely arrested. But that's a different – that's a Fourth Amendment claim. That's not a First Amendment claim. Well, it is a First Amendment claim because it is retaliation. And I guess you could deal with a Fourth Amendment issue as well, but – Well, that's right because you can't decide that that's illegal retaliation unless there was no probable cause. Well, that's if you're dealing with a city. No. I think when you're dealing with – You're calling this retaliation. Right. You've got to have – you can't just say they were – suppose they did, you know, make these charges at Home Depot for their own benefit. Or Mr. Myers' father-in-law. I'm sorry, but that's not – that's – that's disputed, right? That's undisputed. That is undisputed fact. That the $16 was charged for the father-in-law? Yes. Okay. Undisputed fact. I'll take your word for it. I thought it was disputed and that's why they were arrested and fired. No. That's undisputed fact and – I don't think they're conceding that, are they? And the mayor, Mr. Myers, they assume he just went to his father-in-law just to help him out of their own volition and just decided to do it on their own. Was their opinion of it. It's in the record and their depositions are attached. Well, I know what they – I know what they're saying. Right. That's what they're saying. Right. But it's undisputed that money was used at Mr. Myers' father-in-law's house. Is it a city credit card? Yes. But – but that's not – and that's what we think is frankly so appalling about the situation and that the Board of Supervisors would have this information and still side with the mayor frankly is these individuals were going to their supervisor's father-in-law's house to work on his house using city property and they report it to the Board of Supervisors and the mayor starts this process to terminate them and does nothing to the supervisor. Every – you know, even if the mayor was wanting to be fair and say, hey, everybody did something wrong. Mr. Myers, we're going to have to let you go as well. Maybe. But we're not dealing with that. Three years later, what are your clients doing? One client is – got a job making more money. Mr. Lewis, Mr. Pennypacker had a job at a golf course and I think he is having to look for other work. There's an issue – Mr. Butler mentioned that there's an issue of well, back wages are probably still ongoing. For Mr. Lewis, they're not. The back wages stopped a long time ago. For Mr. Pennypacker, it's very likely back wages stopped at his last employment and being terminated. And there was some litigation on that and private settlement on the side as well. What's the value of your claim if you win? Well, Mr. Pennypacker has lost wages of about $35,000, I think. Mr. Lewis' lost wages are not much, maybe $5,000. Now, you always have emotional pain and suffering damages and attorney's fees, but for where we're looking at economic damages, we're looking at probably $40,000. Any settlement negotiations being considered? There has been a settlement conference before Judge Ball and it was not able to get resolved and that was before summary judgment, so we don't know what would happen after that. We have talked a little bit privately about it, but the parties were so far apart that we didn't think it was worth it at that time. Now, after we get an opinion from this court, maybe that reconvenes and I know Judge Wingate particularly requires it on the first day of trial as well, so I can guarantee to this court that settlement will be talked privately and before the court before trial. It seems like this continuing litigation is going to eat up any damages. You'll like it, but they won't. Right. My attorney's fees, I guess, would keep on going up, but my clients, no, it doesn't assist them, it doesn't make them any more money by this case being delayed in any fashion on there and the delay here doesn't make, I guess, the appeal on attorney's fees, but the time doesn't really increase my award in any fashion on there, but I think I'm about to end. Is there any other questions the court has? No. Thank you. All right. Thank you. So, Mr. Butler, is it undisputed that those things purchased at Home Depot were used in Mr. Myers' father-in-law's house? Undisputed that that's what they were purchased for. It's very disputed about whether they were authorized or not. Again, I don't think this court needs to reach these questions, but... Authorized by Myers, you mean? Right. Myers says no. Myers says, I've always been friends with these guys. I ask them to go on their way off of work and cut the water off. These guys go out there and fix the part. The in-laws try to pay them money. They say, no, we don't want your money, we don't want your money. They then go take pictures of themselves working out here and go and take it to the alderman and say, no, he sent us out there and among other things. So that's all in the record then? That is in the record. Okay. A few quick points. This qualified immunity waiver issue, Your Honor, this court has repeatedly rejected the idea that you have to file a motion to dismiss on it. He cites English v. Dyke and then a Fifth Circuit case, Pasco on page seven of his brief. Pasco allowed the defendant to waive it, if I'm not mistaken, at trial. So that's a non-issue. This is solely a cat's paw case. He tried to get up here and concede it. That's always been his theory. This court's law is that plaintiffs are stuck with both their factual and legal theories. That is clear law and his theory has always been that of a cat's paw. The Dupree case. Quick note about Dupree. Dupree does what a lot of cases do in 1983 context. When the defendant doesn't raise this question and say it's not a viable liability theory, the court assumes sometimes and what they do is cite Title VII cases. That's what Dupree does. It cites G and one other case that are both Title VII cases. But the point is is that cat's paw even in Title VII cases is only a theory of employer liability. It's not a theory of an individual liability even in Title VII cases. So that's a big distinction. A lot of cases do that. In fact, Howell versus Ball. Howell mentions at some point in the opinion the cat's paw doctrine but then ultimately decides it on ratification. So that's part of the point of this case is that courts often confuse these concepts in the case law but they're very distinct. So that's why it's important for this Court to provide some clarity. We don't have the summary judgment hearing transcript? No. Most of this district court's transcript. Did you try to supplement as the appellant? As the appellant did you try to supplement the record with that transcript or is it on a There wasn't a court reporter. There was no transcript. There never is. The tendency of this particular district judge he has when the time comes for a pretrial hearing he turns it into a summary judgment hearing but he doesn't have a court reporter and then the trial gets canceled and that's that. That's how these cases work. And there was no issuance of written reasons? No issues of written reasons of the analysis. The First Amendment arrest they didn't raise it at summary judgment first of all. That's on 886 of our reply brief in the record. That was not even an issue at summary judgment. They briefly raised it in the response here but the plaintiffs both conceded at their deposition that they had no reason to believe that the mayor was at all involved in the arrest and the individual police officer is not sued. So arrest only comes up in the reply brief? In the response brief of this case of this appeal it doesn't come up at all in the district court and we note that The theory would have to be that they perceived the arrest and there's no evidence of that. In fact the plaintiffs both conceded that they had no evidence of that. The mayor was deposed and he said I turned it over to the police officers and that was it. I didn't have any more involvement. So that alone makes that claim go away but then you have the warrant as well which would cut off any nexus as well. So that claims a non-starter as well. The plaintiff says he wants to go to trial but we don't even know what the trialable issues are in the case. I'm not even sure how we would do jury instructions. We know what some of the claims are but there are discrete legal issues that prevent many of these claims from even being viable as a matter of law. So it's very important. I understand that this court doesn't have jurisdiction over those remaining claims. Perhaps I should have done a mandamus petition as well but it would be helpful for this court to suggest to the district court that those be ruled on or that it be reassigned to a different district judge. We ask that the district court's denial of summary judgment be reversed on the Mike Kennedy case.